IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| THOMAS A. SIMONIAN, | ) |
| Plaintiff, | ) Case No. 10 C 1615 |
| v. | ) |
| | ) Judge Virginia M. Kendall |
| MAYBELLINE LLC, | ) |
| Defendant. | ) |

# MEMORANDUM OPINION AND ORDER

Plaintiff Thomas Simonian ("Simonian") filed suit against Defendant Maybelline LLC ("Maybelline") in a *qui tam* action on behalf of the public for false patent marking under 35 U.S.C. § 292(a). Simonian's Complaint alleges that Maybelline violated 35 U.S.C. § 292(a) by marking certain cosmetic products with expired patents. Maybelline moves to dismiss Simonian's Complaint based on lack of jurisdiction and failure to state a claim upon which relief can be granted. In the alternative, Maybelline moves to transfer the case to the Southern District of New York, pursuant to 28 U.S.C. § 1404(a). Maybelline also has a pending motion to stay this case pending release of a Federal Circuit decision relating to a relator's standing to bring a *qui tam* action under the false marking statute. For the following reasons, the Court denies Maybelline's Motion to Dismiss, grants Maybelline's Motion to Transfer, and denies as moot Maybelline's Motion to Stay.

# BACKGROUND

The following facts are taken from Simonian's Complaint and are assumed to be true for purposes of this Motion to Dismiss. *See Murphy v. Walker*, 51 F.3d 714, 717 (7th Cir. 1995). Simonian is an individual residing in Geneva, Illinois. (Compl. ¶ 4.) Maybelline is a producer of beauty and makeup products, including mascaras, and is incorporated and maintains its principal

place of business in New York. (Compl. ¶¶ 5, 6.)

Simonian alleges that Maybelline marked certain mascara products with one or more expired patents in order to deceive the public and to "gain a competitive advantage in the market." (Compl. ¶ 2.) The expired patents at issue are United States Patent Numbers 4,898,193 ("the '193 Patent"); 4,993,440 ("the '440 Patent"); 4,871,536 ("the '536 Patent"); and 4,887,622 ("the '622 Patent"). (Compl. ¶ 2.) These four patents were issued to Maybelline between October 1989 and February 1991. (Compl. ¶¶ 10-13.) The '193 Patent expired on October 20, 2007. (Compl. ¶ 12.) The '440 Patent expired on July 27, 2009. (Compl. ¶ 13.) The '536 Patent expired on July 28, 2008. (Compl. ¶ 11.) Finally, the '622 Patent expired on November 30, 2007. (Compl. ¶ 10.) Mascara products including XXLPRO BY EYESTUDIO®, LASH DISCOVERY®, FULL 'N SOFT®, and VOLUM' EXPRESS® continue to be marked and sold with one or more of the expired patents. (Compl. ¶ 15.)

Simonian alleges that Maybelline "knew or should have known" about expiration of the patents because it is a "sophisticated company and has many decades of experience applying for, obtaining, and/or litigating patents." (Compl. ¶¶ 22, 24.) Maybelline also was aware of the illegality of false patent marking but "intentionally marked [its] products with the Expired Patents" in order to prevent competition and deceive the public. (Compl. ¶¶ 25, 28.)

## STANDARD OF REVIEW

When considering a motion to dismiss under Rule 12(b)(6), the Court accepts as true all facts alleged in the complaint and construes all reasonable inferences in favor of the plaintiff. *See Murphy*, 51 F.3d at 717. To state a claim upon which relief can be granted, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Detailed factual allegations" are not required, but the plaintiff must allege facts that,

2

when "accepted as true . . . 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). In analyzing whether a complaint has met this standard, the "reviewing court [must] draw on its judicial experience and common sense." *Iqbal*, 129 S. Ct. at 1950. When there are well-pleaded factual allegations, the Court assumes their veracity and then determines if they plausibly give rise to an entitlement to relief. *Id.*

Rule 9(b) elevates the pleading requirements for allegations of fraud: "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated *with particularity*." Fed. R. Civ. P. 9(b)(emphasis added). But allegations of "[m]alice, intent, knowledge, and other conditions of a person's mind" may be alleged "generally." *Id.* Simonian meets the "particularity" standard if his Complaint points out the "who, what, when, where, and how" of the alleged fraudulent activity. *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990); *Pirelli Armstrong Tire Corp. Retiree Medical Benefits Trust v. Walgreen Co.*, -- F.3d --, 2011 WL 183163, at *4 (7th Cir. Jan. 21, 2011).

This Rule 9(b) "particularity" calculus "may vary on the facts of a given case." *Pirelli*, 2011 WL 183163, at *4. For example, the Court can relax the elevated requirements of Rule 9(b) where the facts comprising the fraud are uniquely within the defendant's possession. *Corley v. Rosewood Care Center Inc.*, 142 F.3d 1041, 1051 (7th Cir. 1998). Moreover, fraud allegations based on "information and belief" are generally unable to satisfy the "particularity" standard. *Bankers Trust Co. v. Old Republic Ins. Co.*, 959 F.2d 677, 684 (7th Cir. 1992). But this is not a blanket rule; "information and belief" allegations can satisfy the particularity requirement of Rule 9(b) "so long as (1) the facts constituting the fraud are not accessible to the plaintiff and (2) the plaintiff provides

3

'the grounds for his suspicions.'" *Pirelli*, 2011 WL 183163, at *5.

## DISCUSSION

### I.     Maybelline's Motion to Stay

As an initial matter, Maybelline requested a stay until the Federal Circuit released its ruling in *Stauffer v. Brooks Brothers, Inc.*, 619 F.3d 1321 (Fed. Cir. 2010).   The Federal Circuit has since ruled on this case and therefore the Court denies as moot Maybelline's Motion to Stay.

### II.    Maybelline's Motion to Dismiss

Maybelline moves to dismiss Simonian's Complaint for two independent reasons.  First, Maybelline maintains that Simonian, as the relator, lacks Article III standing.  Second, Maybelline argues that Simonian's Complaint fails to plead fraud with the required degree of particularity under Rule 9(b).[1]

#### A.    Relator's Standing Under Section 292

A plaintiff establishes standing by showing injury in fact, causation, and redressability. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).  Here, Maybelline claims that Simonian did not suffer an injury, either personally or as a direct competitor of Maybelline, from the alleged false marking.  The standing requirements for a relator, however, are different from those for a typical plaintiff.  A relator brings suit under the governing statute on behalf of his own interest (i.e.,

---

[1] Maybelline initially argued that an "expired patent" is not an "unpatented article" under Section 292, and therefore Simonian failed to state a valid claim.  The Federal Circuit recently addressed this precise issue, however, and held that expired patents are "unpatented articles."  "An article no longer protected by a patent is not 'patented,' and is more aptly described as 'unpatented.'"  *Pequignot v. Solo Cup Co.*, 608 F.3d 1356, 1361 (Fed. Cir. 2010).  Given this recent decision, Maybelline stated that it "withdraws its argument based on the status of marking of expired patents as false markings."  (R. 35, Reply Mot. 9 n.2.)

4

collection of a "bounty" for bringing the suit) and the interest of the United States.² *See Vermont Agency of Natural Res. v. United States*, 529 U.S. 765, 772 (2000). Section 292 permits *qui tam* actions so that "members of the public" can help deter and detect false marking. 35 U.S.C. § 292(b) ("Any person" can sue on behalf of the United States for false marking); *Forest Group, Inc. v. Bon Tool Company*, 590 F.3d 1295, 1303-04 (7th Cir. 2009). Because relators have the unique role of suing on behalf of the interest of the United States, the standing analysis depends upon injury to the United States, not the individual relator. *Vermont Agency*, 529 U.S. at 773-74 (relator is assignee of federal government's claim, so government injury controls the analysis).

The Federal Circuit's *Stauffer* decision established the final link by holding that a violation of law constitutes injury to the United States, and as such a relator alleging violations of the false patent marking statute has standing. In *Stauffer*, the Federal Circuit applied *Vernon Agency* to reach the conclusion that "a *qui tam* provision operates as a statutory assignment of the United States' rights," and "a violation of that statute [Section 292] inherently constitutes an injury to the United States." *Stauffer v. Brooks Brothers Co.*, 619 F.3d 1321, 1325 (Fed. Cir. 2010); *Simonian v. Oreck Corp.*, No. 10 C 1224, 2010 WL 3385465, at *2-3 (N.D. Ill. Aug. 23, 2010) (Gettleman, J.) (same plaintiff, Simonian, had standing under Section 292). Here, Simonian alleges that Maybelline violated the false marking statute; this satisfies *Stauffer*'s criteria for standing, so the Court denies Maybelline's Motion to Dismiss based on lack of subject matter jurisdiction.

**B.    Failure to State a Claim Under Rule 12(b)(6)**

Maybelline claims that Simonian's Complaint fails to state a claim upon which relief can be

---

² Under Section 292, every falsely marked product constitutes a separate "offense," and violators can be fined for up to $500 for each offense. *See* 35 U.S.C. § 292(a). "Any person may sue for the penalty, in which event one-half shall go to the person suing and the other to the use of the United States." *See* 35 U.S.C. § 292(b).

5

granted. An action for false marking falls under 35 U.S.C. § 292(a), which provides that:

> Whoever marks upon, or affixes to, or uses in advertising in connection with any unpatented article, the word "patent" or any word or number importing that the same is patented for the purpose of deceiving the public . . .[shall] not be fined more than $500 for every such offense.

Specifically, a valid Section 292 false patent marking claim exists where (1) the defendant falsely marked an unpatented article, and (2) the marking was done with the intent to deceive the public. *Clontech Labs, Inc. v. Invitrogen Corp.*, 406 F.3d 1347, 1352 (Fed. Cir. 2005).

### 1. "Circumstances Constituting Fraud"

Rule 9(b) is not strictly limited to fraud claims. It applies more broadly to "allegations of fraud," that is, claims "premised upon a course of fraudulent conduct." *Pirelli*, 2011 WL 183163, at *9; *Borsellino v. Goldman Sachs Group, Inc.*, 477 F.3d 502, 507 (7th Cir. 2007) (claims of interference with economic advantage, interference with fiduciary relationship, and civil conspiracy were based upon defendant's alleged fraudulent conduct so Rule 9(b) applied to all three claims). Because there is no direct authority holding that false patent marking claims fall under Rule 9(b), Simonian contends that Rule 8(a)'s less stringent "fair notice" pleading standard applies instead of Rule 9(b)'s elevated "particularity" standard. Simonian's argument is unavailing.

A Section 292 claim requires the plaintiff to establish that the defendant marked its products with expired patents, with the intent to "deceiv[e] the public." 35 U.S.C. § 292. The conduct at issue here sounds in fraud because Simonian is alleging that Maybelline held certain products out to consumers and other competitors as if they had valid patents, when in fact they did not. Therefore, just like many other courts, this Court finds that a false patent marking claim should be analyzed through the lens of Rule 9(b). *See, e.g., Simonian v. Blistex, Inc.*, No. 10 C 1201, 2010 WL 4539450,

at *5-6 (N.D. Ill. Nov. 3, 2010) (St. Eve, J.); *Simonian v. Cisco Sys., Inc.*, No. 10 C 1306, 2010 WL 2523211, at *3 (N.D. Ill. June 17, 2010) (Der-Yeghiayan, J.); *Brinkmeier v. BIC Corp.*, 733 F. Supp. 2d 552, 563 (D. Del. 2010); *Jupiter Networks v. Shipley*, No. 09 C 696, 2009 WL 1381873, at *4 (N.D. Cal. May 14, 2009).

Here, while intent can be pled generally under Rule 9(b), the Complaint must provide sufficient facts to outline the "circumstances constituting fraud." This is done by providing facts that fill in the "who, what, when, where, and how" of the alleged fraudulent conduct. *See DiLeo*, 901 F.2d at 627. Simonian's Complaint presents facts not based "upon information and belief" that sufficiently explain the fraudulent conduct. The "who" is Maybelline. (Compl. ¶ 2.) The "what" is Maybelline allegedly falsely marking its cosmetic products with the '193, '440, '536, and '622 patents. (Compl. ¶¶ 10-13, 21.) The "when" is after the patents at issue have expired. (Compl. ¶¶ 10-13, 21.) The "where" is on the packaging of the cosmetic products. (Compl. ¶¶ 2, 16-19.) The "how" is the marking of its cosmetic products with these four expired patents. (Compl. ¶¶ 2, 10-13, 15, 21, 26, 27.) These factual allegations, none of which are based "upon information and belief," adequately outline the alleged fraudulent conduct. *See, e.g., San Francisco Technology, Inc. v. Sunstar Americas. Inc.*, No. 10 C 5000, 2011 WL 291168, at *3-4 (N.D. Ill. Jan. 27, 2011) (St. Eve, J.) (setting aside all allegations based "upon information and belief," complaint sufficiently alleged false patent marking claim under Rule 9(b)); *Oreck Corp.*, 2010 WL 3385465, at *4 (Simonian provided a "general outline" of defendant's alleged fraud scheme, which fulfilled Rule 9(b)).

### 2. Intent to Deceive

Not only does Simonian's Complaint adequately provide factual context for the alleged fraudulent conduct, but it also lays out enough facts to show that Maybelline falsely marked its

7

patents with the intent to deceive. Maybelline maintains that Simonian's allegations of deceptive intent are deficient under Rule 9(b).

Although under Rule 9(b) Simonian must state the "circumstances constituting fraud" with particularity, "[m]alice, intent, knowledge, and other conditions of a person's mind may be *alleged generally*." Fed. R. Civ. P. 9(b)(emphasis added). As such, Simonian need not satisfy the "who, what, when, where, and how" criteria to adequately allege intent; it is enough to simply present facts that permit a court to "reasonably infer" that Maybelline "acted with the requisite state of mind." *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1327 (Fed. Cir. 2009); *see, e.g., San Francisco Technology*, 2011 WL 291168, at *4. In a case such as this where intent is a material element of the claim, Rule 8(a)'s "fair notice" framework replaces Rule 9(b)'s elevated "particularity" standard. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1954 (2009) (noting that Rule 8(a) governs intent allegations); *see, e.g., San Francisco Tech.*, 2011 WL 291168, at *4 (same). As a result, the alleged facts bearing on the defendant's mental state must provide a plausible basis for relief. *Id.* at 1950; *Twombly*, 550 U.S. at 556.

In *Pequignot v. Solo Cup Company*, 608 F.3d 1356 (Fed. Cir. 2010), the Federal Circuit elucidated the framework for establishing whether a patent holder using expired patent numbers to mark its products had the requisite "intent to deceive" the public. The Federal Circuit established that "the combination of a false statement and knowledge that the statement was false creates a rebuttable presumption of intent to deceive the public." *Id.* at 1362. This presumption, however, is "weaker" when the "false markings at issue are expired patents that had previously covered the marked products." *Id.* at 1364. Moreover, "mere knowledge that a marking is false is insufficient to prove intent if [the defendant] can prove that it did not consciously desire the result that the public

8

be deceived." *Id.*

Here, Simonian's allegations create a reasonable inference of deceptive intent. First, he alleges that Maybelline is a "sophisticated company" with "many decades of experience applying for, obtaining, and/or litigating patents," so it knew or should have known about expiration of the patents.[3] (Compl. ¶¶ 22, 24.) Moreover, marking products with patents enables a company to solidify a market position by deterring entry by competitors. (Compl. ¶¶ 25, 26, 27.) At this initial stage of litigation, such allegations are enough to make it plausible that Maybelline had the requisite intent to deceive. In fact, other courts within this district have examined Simonian's Section 292 complaints against different defendants and have also come to a similar conclusion. *See, e.g., Blistex*, 2010 WL 4539450, at *4 (allegations that Blistex was a sophisticated company that was aware or should have been aware that the patent expired sufficiently pled deceptive intent); *Oreck Corp.*, 2010 WL 3385465, at *4 (alleging that defendant knew patents were expired, and therefore false, established deceptive intent); *Simonian v. Irwin Indus. Tool Co.*, No. 10 C 1260, 2010 WL 3488129, at *2 (N.D. Ill. Aug. 27, 2010) (Lindberg, J.) (allegations that defendant was sophisticated, had an experienced legal team, and knew or should have known the patents expired created an inference of intent to defraud).

The Court therefore denies Maybelline's Motion to Dismiss.[4]

---

[3] Some of Simonian's allegations regarding Maybelline's deceptive intent are based "upon information and belief." Any potential direct or circumstantial evidence about Maybelline's intent to deceive is outside of Simonian's reach this early in the lawsuit. Moreover, *Pirelli*'s two-prong test for allegations based "upon information and belief" applied only to meeting 9(b)'s "particularity" standard, not the more "general" pleading requirement for intent. *Pirelli*, 2011 WL 183163, at *5.

[4] Maybelline also seeks to dismiss Simonian's Complaint because an "identical" case was filed before this case in the Northern District of California. *See Serlin v. Arthur Andersen & Co.*, 3 F.3d 221, 223 (7th Cir. 1993) (a case duplicative of another case pending in another federal court may be dismissed for "reasons of wise judicial administration."). Here, the Seventh Circuit has not "adhered to a rigid first to file rule." *Tempco Elec. Heater Corp. v. Omega Eng'g, Inc.*, 819 F.2d 746, 750 (7th Cir. 1987). Moreover, based on the information before the Court, because

9

**III.    Motion to Transfer**

As an alternative to its Motion to Dismiss, Maybelline moves to transfer this case under 28 U.S.C. § 1404(a) to the Southern District of New York. Section 1404(a) states: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404. The Southern District of New York would be an appropriate venue because Maybelline is incorporated under New York law and has its principal place of business in New York. *See* 28 U.S.C. § 1391(c). Nor does Simonian challenge the Southern District of New York as an improper venue. Therefore, the question before the Court is whether transferring this case would increase the convenience of the parties and witnesses and advance the interests of justice. *See Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219 (7th Cir. 1986).

The Court examines the public and private interests in deciding a motion to transfer. The "private interests" include "(1) the plaintiff's choice of forum, (2) the situs of the material events, (3) the relative ease and access to sources of proof, and (4) the convenience of the parties [and witnesses]." *First Nat. Bank v. El Camino Resources, Inc.*, 447 F. Supp. 2d 902, 912 (N.D. Ill. 2006) (Guzman, J.). Moreover, the "interest of justice" component includes the court's familiarity with the underlying substantive law and the speed for deciding the case. *Id.*; *Heller Fin., Inc. v. Midwhey Powder Co., Inc.*, 883 F.2d 1286, 1293 (7th Cir. 1989).

Courts generally assume that a party will testify voluntarily at trial; however, issues related to non-party witnesses implicate aspects of each of the § 1404(a) factors. *See FUL Inc. v. Unified Sch. Dist. No. 204*, 839 F.Supp. 1307, 1311-12 (N.D. Ill.1993) (Alesia, J.). The cost of obtaining

---

the products at issue in both cases are not identical, the Court denies dismissing the Complaint on this basis.

attendance of willing witnesses involves the convenience of the parties; the need for such witnesses to travel to the courthouse to testify relates to the convenience of the witnesses; and finally, the availability of the compulsory process for attendance of unwilling witnesses speaks to the interest in justice. *See Petersen v. Union Pacific R.R. Co.*, No. 04 C 5918, 04 C 5949, 04 C 6032, 05 C 6263, 2006 WL 1049715, at *3 (N.D. Ill. April 19, 2006) (Kendall, J.).

This Court is vested with a great deal of discretion in weighing these factors, and the decision to transfer must be made on a case-by-case basis. *See Coffey*, 796 F.2d at 219.

### A. Private Interests

First, "[t]he plaintiff's initial choice of forum is usually afforded substantial deference, particularly when it is the plaintiff's home forum." *See, e.g., Irwin Indus. Tool Co. v. Orosz*, No. 03 C 1738, 2003 WL 22048073, at *7 (N.D. Ill. Aug. 29, 2003) (Darrah, J.) (also noting that the "weight" given to plaintiff's forum choice can differ "depending on the circumstances of each individual case"). This high deference, however, is considerably diluted for a *qui tam* plaintiff, whose choice of venue is afforded only "slight deference." *See, e.g., Simonian v. Monster Cable Prod., Inc.*, No. 10 C 1269, 2010 WL 4822899, at *1 (N.D. Ill. Nov. 22, 2010) (Bucklo, J.) (relator "not entitled to substantial deference"); *Zojo Solutions, Inc. v. Leviton Mfg. Co., Inc.*, No. 10 C 881, 2010 WL 4257546, at *1 (N.D. Ill. Oct. 20, 2010) (Grady, J.) ("little weight" given to relator's choice of venue; *Seely v. Cumberland Packing Corp.*, No. 10 C 2019, 2010 WL 5300923, at *3 (N.D. Cal. Dec. 20, 2010) (relator's choice of forum "deserves little deference"). Diminished deference is appropriate because in a *qui tam* action like this, Simonian is bringing suit not for his own benefit, but also to benefit the United States. *See Vermont Agency*, 529 U.S. at 772-74. Because Simonian filed this suit in the Northern District of Illinois, the Court starts by giving that

choice "slight deference."

This initial deference, however, is eroded by the fact that the situs of the material events giving rise to this lawsuit occurred within the Southern District of New York. Simonian claims that the alleged fraudulent conduct occurred here in the Northern District of Illinois when Maybelline sold the falsely marked products to consumers. The defect with this argument is that the relevant conduct leading to this lawsuit is not the final sale but rather the business decisions made at Maybelline's corporate offices to package, market, distribute, and eventually sell cosmetic products with expired patents; after all, because false patent marking liability turns largely on whether the mismarking was done intentionally, it is fitting that the situs of relevant events is where Maybelline's corporate "operations are located." *See, e.g., U.S. ex rel. Heathcote Holdings Corp., Inc. v. Leapfrog Enterprises, Inc.*, No. 10 C 1471, 2010 WL 5439721, at *3 (N.D. Ill. Dec. 27, 2010) (Coar, J.); *Monster Cable Prod., Inc.*, 2010 WL 4822899, at *2 (situs is where defendant's headquarters are located and where any patent documentation is housed). Here, Maybelline is headquartered in New York and any documents that could reveal direct or circumstantial evidence of Maybelline's intent to falsely mark its products would be in New York. (R. 36 at 5; Hastings Aff. ¶ 21.) The "situs" factor thus supports transfer.

The convenience of witnesses factor tilts the scale further toward transfer to the Southern District of New York. The Court may not transfer a case for the convenience of one party's witnesses at the expense of the other party's witnesses. *See Heller Fin., Inc.*, 883 F.2d at 1293. In evaluating the availability of witnesses, this Court should consider not only the quantity of witnesses in each forum but also the nature and relevance of their testimony. *See Howell v. Jofe*, 478 F. Supp. 2d 1014, 1023 (N.D. Ill. 2006) (Bucklo, J.); *FUL*, 839 F.Supp. at 1311.

Simonian contends that witnesses reside in Illinois but he fails to identify, even generally, who these potential witnesses are or how they would be able to provide relevant testimony about the expiration of patents or Maybelline's deceptive intent. Even considering Simonian as a witness, the testimony of Maybelline's potential witnesses, who are the principal sources of discoverable material, would far exceed Simonian's testimony in both relevance and detail. *See, e.g., Zojo Solutions, Inc.*, 2010 WL 4257546, at *3 (plaintiff's false patent marking claim "stems from" defendant's corporate decisions, so "defendant's evidence will constitute the bulk of proof"). In fact, the very nature of *qui tam* actions, which are filed on behalf of an individual and the interests of the United States, make it unlikely that Simonian will personally have significant "evidence in his possession." *Simonian v. Hunter Fan Co.*, No. 10 C 1212, 2010 WL 3975564, at *3 (N.D. Ill. Oct. 7, 2010) (St. Eve, J.).

In contrast, the affidavit of Laura Hastings, Vice-President of L'Oreal USA (Maybelline's parent company), states that employees in its New York and New Jersey offices would be the most knowledgeable to testify about the following topics: (1) design and creation of the packaging on Maybelline products, including artwork; (2) corporate decisions regarding the content of product packaging, such as patent numbers; and (3) marketing, finance, and operations support for the sale of Maybelline products. (Hastings Aff. ¶¶ 10, 11, 12, 17, 18.) In fact, Hastings' affidavit represents that "all employees" with knowledge of Maybelline's corporate decisions to package its products are in New York. (Hastings Aff. ¶ 17.) Simonian offers no credible evidence to counteract the fact that the vast majority of witnesses with information relevant to this lawsuit are in New York. As such, the convenience of witnesses factor also justifies transfer.

For similar reasons, transfer to the Southern District of New York is more convenient for

13

the parties. As stated above, the majority of pertinent documents and witnesses are all in New York, and Simonian cannot concretely show how litigation in New York would be overly burdensome for him. *See, e.g., Monster Cable Prods. Inc.*, 2010 WL 4822899, at *2 (vague allegations of inconvenience or high cost to relator unable to support denying transfer); *Atkins v. Magic Sliders, L.P.*, No. 10 C 1533, 2010 WL 5174539, at *3 (S.D. Cal. Dec. 15, 2010) (witnesses and evidence almost entirely in New York, so litigation in that venue would be less expensive for both parties).

The situs of relevant conduct is within the Southern District of New York, and it is more convenient for the witnesses and parties to litigate there. These three factors overcome the "slight deference" afforded to Simonian's choice of forum. As a result, the private interests here favor transfer.

**B.     Interests of Justice**

The interests of justice componenet of § 1404(a) focuses on the efficient and fair administration of the courts rather than on the interests of the litigants themselves. *See Coffey*, 796 F.2d 217, 220 (7th Cir.1986). In evaluating this factor, the Court considers the relative speed with which the case will go to trial, the familiarity of the judge with the applicable law, the relationship of the parties and claims to the forum, and access to sources of proof. *See Flexicorps, Inc. v. Benjamin & Williams Debt Collectors, Inc.*, No. 06 C 3183, 2007 WL 1560212, at *6 (N.D.Ill. May 29, 2007).

First, there is no substantial difference in the efficiencies of the two courts. The median number of months from filing to disposition, and the median number of months from filing to trial both indicate the likelihood of a speedy trial. *See Tingstol v. Co. v. Rainbow Sales, Inc.*, 18 F. Supp.

2d 930, 934 (N.D. Ill.1998) (Alesia, J.). According to the 2010 Federal Court Management Statistics, the median number of months from filing to disposition of a civil case in the Northern District of Illinois is 6.2 months, whereas the Southern District of New York's median for disposing of civil cases is 8.1 months. Federal Court Management Statistics 2010, *available at* http://www.uscourts.gov/viewer.aspx?doc=/cgi-bin/cmsd2010Sep.pl (last visited Feb. 23, 2011). Similarly, the median number of months between filing a civil action and going to trial in the Northern District of Illinois is 28.2 months, whereas the filing to trial date for a civil action in the Southern District of New York is 33.6 months. *See id*. This factor favors neither the Northern District of Illinois nor the Southern District of New York because the disposition times are relatively similar. *See, e.g., Rendon v. Wexford Health Serv., Inc.*, No. 10 C 1590, 2010 WL 5129818, at *7 (N.D. Ill. Dec. 10, 2010) (Manning, J.) (speed of disposition did "not sway the court either way" where the Northern District of Illinois had median time of 6.2 months from filing to disposition and 27.8 months from filing to trial, and the Central District of Illinois had median of 9.9 months from filing to disposition and 31 months from filing to trial).

Moreover, because the false patent marking claim derives from federal law, both districts have comparable knowledge and experience for handling the case. *See, e.g., Leapfrog Enterprises, Inc.*, 2010 WL 5439721, at *3 ("Since the case arises under federal law, either court would have the same degree of familiarity with the law."); *cf. Buehler v. S & G Enterprises, Inc.*, No. 09 C 1396, 2009 WL 1543664, at *6 (N.D. Ill. June 2, 2009) (Kendall, J.) (Texas judges would have more familiarity with a breach of contract claim under Texas state law).

The efficiency of discovery and trial proceedings, however, favors transfer. As indicated above, the situs of material events occurred at Maybelline's corporate headquarters in New York,

15

and the sources of proof are in New York. Therefore, New York has a closer connection to this specific cause of action. *See, e.g., Doage v. Bd. of Regents*, 950 F. Supp. 258, 262 (N.D. Ill. 1997) (Norgle, J.) ("Resolving litigated controversies in their locale is a desirable goal of the federal courts."). Likewise, New York has a strong interest in assuring that its corporations are following the law in the packaging, manufacturing, marketing, and selling of products. Finally, although states generally have a general interest in providing an appropriate forum for their citizens to seek redress against out-of-state defendants, this consideration is far less persuasive for a *qui tam* plaintiff like Simonian, who is not bringing the suit only on his own behalf. *See Hill-Jackson v. FAF, Inc.*, 10 C 364, 2010 WL 3403882, at *7 (N.D. Ill. Aug. 25, 2010) (Aspen, J.).

Therefore, the "interest of justice" component reinforces the Court's determination that this matter should be transferred to the Southern District of New York.

## CONCLUSION AND ORDER

For these reasons, the Court denies Maybelline's Motion to Dismiss, denies as moot Maybellines' Motion to Stay, and grants Maybelline's Motion to Transfer to the Southern District of New York.

_____
Virginia M. Kendall
United States District Court Judge
Northern District of Illinois

Date: March 1, 2011